UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TOMEKO N. MORROW-BERNARD**, <br> Plaintiff, <br> v. <br> **NANCY A. BERRYHILL**, Acting Commissioner of Social Security <br> Defendant. | Case No. 4:16-cv-01762-YGR <br><br> **ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** <br><br> RE: Dkt. Nos. 14, 22 |

Plaintiff Tomeko N. Morrow-Bernard filed this action seeking judicial review of the Administrative Law Judge's (the "ALJ") determination that plaintiff is not disabled under the Social Security Act (the "Act"). Plaintiff challenges the ALJ's failure to articulate specific and legitimate reasons for rejecting two aspects of the medical opinion offered by examining physician Dr. McMillan when determining plaintiff's residual functional capacity ("RFC"), namely that plaintiff (i) requires an hourly break from work, and (ii) is limited to four hours of standing or walking in an eight-hour day. Based thereon, plaintiff argues that the Court should reverse the ALJ's decision without a rehearing and find that plaintiff is disabled, or, alternatively, remand to the ALJ for further proceedings.

Now before the Court are cross-motions for summary judgment. (Dkt. Nos. 14, 22.)[1] Having considered the papers submitted and the administrative record in this case, and for reasons set forth below, plaintiff's motion for summary judgment is **GRANTED IN PART** and defendant's cross-motion for summary judgment is **DENIED**. As set forth herein, the Court **DENIES** plaintiff's

---

[1] Plaintiff filed her motion for summary judgment on December 12, 2016. (Dkt. No. 14.) The Commissioner filed a cross-motion on March 7, 2017. (Dkt. No. 22.) Plaintiff filed her reply on March 21, 2017. (Dkt. No. 23.)

1

1  motion for reversal without a remand for rehearing but **GRANTS** plaintiff's motion with respect to
2  remanding for further proceedings. Accordingly, the action is **REMANDED** to the ALJ for further
3  proceedings consistent herewith.

**I.     PROCEDURAL BACKGROUND**

On March 15, 2012, plaintiff filed an application for a period of disability and disability insurance benefits with the Social Security Administration (the "SSA"), claiming that she had been disabled since January 15, 2008. (Dkt. No. 11, Administrative Record ("AR") at 16.) The claim was denied on December 3, 2012, and again upon reconsideration on July 22, 2013. (*Id.*)

Plaintiff filed a timely appeal and requested a hearing with an ALJ on September 20, 2013. (*Id.*) Plaintiff appeared and testified at a hearing on June 23, 2014, and amended her application to allege that she had been disabled since March 15, 2009. (*Id.*) In a decision dated January 9, 2015, the ALJ found that plaintiff was not disabled under the Act. (*Id.* at 16, 27.)

On March 12, 2016, plaintiff requested review of the ALJ's decision by the Appeals Council ("AC"), and the AC denied plaintiff's request, finding "no reason under our rules to review the [ALJ] decision." (*Id.* at 1-8.)[2] Accordingly, the ALJ's decision became the final decision of the Commissioner of the SSA. (*Id.* at 1.) Thereafter, plaintiff initiated the instant action, seeking judicial review. (Dkt. No. 1.)

**II.    LEGAL STANDARD**

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court may reverse the ALJ's decision only if it "contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). It is "more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (quoting *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Where the

---

[2] Such decision included an implicit finding that the ALJ did not abuse her discretion, make a legal error, or render a decision unsupported by substantial evidence. (*Id.* at 1.)

evidence is susceptible to more than one rational conclusion, the Court must uphold the ALJ's decision. *Burch*, 400 F.3d at 679.

The SSA employs a five-step sequential framework to determine whether a claimant is disabled. At Step One, the ALJ must determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). A person is engaged in substantial work activity if her work involves significant physical or mental activities. 20 C.F.R. § 404.1572(a). Gainful work activity is defined as "work usually done for pay or profit," regardless of whether the claimant receives a profit. 20 C.F.R. § 404.1572(b). If the claimant is engaged in substantial gainful activity, she is not disabled. If the claimant does not engage in substantial gainful activity, then the ALJ proceeds to Step Two of the evaluation.

At Step Two, the ALJ must determine whether the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). A "severe" impairment is defined in the regulations as one that significantly limits an individual's ability to perform basic work activities. If the claimant does not have a severe impairment (or combination of impairments) that meets the duration requirement of 20 C.F.R. § 404.1509,[3] she is not disabled pursuant to the regulation. Otherwise, the ALJ proceeds to Step Three.

At Step Three of the sequential evaluation, the ALJ must determine whether a claimant's impairment or combination of impairments "meets or equals" the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1., 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526 (providing the applicable standard for medical equivalence of impairments). If the claimant's impairment or combination of impairments meets the criteria of a listing and the duration requirement, the claimant is disabled. 20 C.F.R. § 404.1509. If the impairment or combination of impairments does not meet the criteria of a listing or does not meet the duration requirement, the ALJ proceeds to Step Four.

---

[3] The duration requirement specifies that the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months" unless it is "expected to result n death." 20 C.F.R. § 404.1509.

3

Before reaching Step Four, the ALJ must determine the claimant's Residual Functional Capacity (the "RFC"). 20 C.F.R. § 404.1520(e). A claimant's RFC consists of her ability to engage in physical and mental work activity on an ongoing basis, in spite of any limitations from impairments. The ALJ considers both severe and non-severe impairments in determining the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 404.1545.

At Step Four, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(f). If the claimant has the RFC to perform past relevant work, she is not disabled. If the claimant is unable to do past relevant work or has no past relevant work, the ALJ proceeds to the final step in the sequential evaluation.

At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience in determining whether the claimant can perform any other work besides past relevant work. 20 C.F.R. § 404.1520(g). If the claimant can "make an adjustment to other work," she is not disabled under the regulation. Otherwise, she is found to be disabled.

### III. THE ALJ'S DECISION

The ALJ applied the five-step sequential analysis to determine whether plaintiff was disabled and eligible for disability insurance benefits. A summary of her decision follows below.

#### A. Step One

At Step One, the ALJ credited plaintiff's testimony and found that she had not engaged in substantial gainful activity since March 15, 2009, the alleged onset date. (AR at 18.)

#### B. Step Two

At Step Two, the ALJ determined that the plaintiff suffered from the following severe impairments: (i) hypertension, (ii) hypertensive heart disease, (iii) type I diabetes, (iv) carpal tunnel syndrome, (v) stage III chronic kidney disease, (vi) loss of vision in the left eye and (vii) obesity. (*Id.*) The ALJ found that these impairments "have more than a minimal effect on her ability to work." (*Id*. at 19.)

#### C. Step Three

At Step Three, the ALJ found that plaintiff did not have an "impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1." (*Id*.) Specifically, the ALJ found that plaintiff's medical records did not support a finding that she suffered from major dysfunction of a joint, chronic heart failure, or a visual impairment, and the objective medical evidence did not suggest that the "cumulative effects of plaintiff's obesity meet the criteria set forth in any section of the Listings . . . ." (*Id.* at 19-20.)

### D. Pre-Step Four: RFC Determination

The ALJ determined plaintiff had the RFC to perform "light work" under 20 C.F.R 404.1567(b) with the following modifications:

> sitting for 6 hours in an 8 hour day, standing/walking for 6 hours in an 8 hour day, lifting/carrying 10 pounds frequently and 20 pounds occasionally, frequent crouching, crawling, stooping kneeling, balancing and climbing of stairs and ramps, no climbing of ladders, ropes or scaffolds, and no work requiring binocular vision.

(*Id*. at 20.) In so finding, the ALJ explicitly rejected the opinion of treating physician Dr. Gordon and implicitly rejected two aspects of examining physician Dr. McMillian's opinion, namely that plaintiff (i) required an hourly break from work and (ii) could only stand or walk for four hours per day.

#### 1. Treating Physician Dr. Amy Gordon

Plaintiff has been the patient of Dr. Amy Gordon since March 2006. (*Id.* at 313.) In a Diabetes Medical Source Statement dated March 7, 2012, Dr. Gordon opined that claimant's condition limited her to "standing for 15 minutes at a time up to 2 hours per day, sitting for 3-4 hours at a time up to 8 hours per day, [and] lifting 10 pounds rarely . . . ." (*Id*. at 21, 419.) In a letter to the SSA dated September 17, 2012, Dr. Gordon stated that plaintiff's hypertension was very difficult to control despite multiple medications, and the medications sometimes had the side effect of severe fatigue. (*Id*. at 21.) She also noted that plaintiff could not walk more than one half-block without shortness of breath and chest pain, and could not perform work involving driving, operating heavy equipment, irregular walking, bending, climbing stairs, or kneeling, and could not perform desk work on a regular basis. (AR at 22, 722.) Dr. Gordon concluded that the claimant could stand or walk for less than two hours in an eight-hour day, sit for two hours in an

5

eight-hour day, lift less than ten pounds rarely, and would require an unscheduled break every one to two hours. (AR 22, AR 904.)

### 2. Examining Physician Dr. Eugene McMillan

In a three-page report noting a date of October 3, 2012, Dr. McMillan diagnosed claimant with uncontrolled hypertension, hypertensive heart disease, and chest pain. (AR 22, 782-85.) Relevant here, Dr. McMillan concluded that the claimant could "lift/carry 10 pounds frequently and 20 pounds occasionally, could stand/walk for *4 hours per day, would need a break approximately every hour while working*, and could engage in activities requiring stooping, kneeling and crouching for up to 1/3 of the workday." (AR 22, 782-85, emphasis supplied.)

### 3. Medical Expert Dr. Vu

Medical expert Dr. Vu testified on June 23, 2014, that Dr. Gordon's conclusions on claimant's work capacity were unsupported by objective medical evidence. (*Id*. at 23.) Specifically, Dr. Vu found evidence of improved ejection fraction reported on multiple echocardiograms and during a September 2010 catheterization. Dr. Vu highlighted that claimant's ejection fraction had improved from 25% in 2007 to 80% in 2013. (*Id.* at 39.) Dr. Vu further stated that these findings indicate improved cardiac functioning over time despite the claimant's persistent complaints of chest pain. Thus, Dr. Vu concluded that Dr. Gordon's classification of plaintiff's congestive heart failure as Class III, cardiac symptoms, and sleepiness were not supported by the record. (*Id*. at 38.)

Dr. Vu stated plaintiff's diagnosis as including hypertension, hypertensive heart disease, diabetes, and severe obesity. (*Id*. at 37.) Dr. Vu proposed that claimant could perform light work, including "*standing and walking six hours a day* and sitting six hours a day." (*Id*. at 38, 51, emphasis supplied.) Notably, Dr. Vu did not opine that plaintiff required a break approximately every hour, or at all.

### 4. ALJ Findings

The ALJ rejected treating physician Dr. Gordon's conclusions on the ground that these conclusions were (i) not well-supported by the objective medical evidence in the record, including the "echocardiogram and other findings reported during cardiac work-ups" and (ii) "inconsistent

6

with the opinions of all the other physicians who have evaluated the claimant's condition." (*Id*. at 23-24.) The ALJ further found that Dr. Gordon "failed to acknowledge that the claimant's reported fatigue could be associated with sleep apnea." (*Id*. at 24.)

After rejecting Dr. Gordon's opinion, the ALJ gave "great weight" to medical expert Dr. Vu. The ALJ determined that Dr. Vu's conclusions were based upon a review of the entire record, and were consistent with the objective medical evidence. (*Id*. at 23.) The ALJ also stated that she gave "great deference" to Dr. McMillan because Dr. McMillan's opinions were "not inconsistent with Dr. Vu's findings and are likewise supported by the objective medical evidence of the record." (*Id*. at 23, 782-85.)

### E. Step Four

At Step Four, and based on the foregoing, the ALJ found that the claimant was unable to perform her past relevant work as an institutional cook, security guard, and home caregiver. Specifically, the ALJ acknowledged that the impartial vocational expert testified that plaintiff "was unable to perform her past relevant work." (*Id*. at 25.)

### F. Step Five

At Step Five, the ALJ asked the vocational expert to determine whether "jobs exist in the national economy for an individual with the [plaintiff's] age, education work experience, and residential functioning capacity." (*Id*. at 26.) The vocational expert testified that, in light of all of those factors, several jobs existed that were available to plaintiff (e.g. order caller, telephone quotation clerk, and laundry sorter.) The ALJ found that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles and Social Security Rules 85-15 and 96-9p. (*Id.*). On such bases, the ALJ found that claimant was not disabled as defined under the Act. (*Id*. at 26.) On cross-examination, the vocational expert admitted that if claimant required an hourly break from work she "would not be employable." (*Id*.)

## IV. DISCUSSION

As noted above, plaintiff claims solely that the ALJ erred in determining plaintiff's RFC when she failed to state specific and legitimate reasons for rejecting two aspects of Dr. McMillan's medical opinion. The Commissioner counters that the ALJ gave "great deference" to Dr.

McMillan's opinion, and that the ALJ's decision was supported by substantial evidence.

### A. Physician Opinions – Standard of Consideration

In determining whether a claimant is disabled within the meaning of the Act, the ALJ must consider all medical opinion evidence. *Tommasetti v. Astrue,* 533 F. 3d 1035, 1041 (9th Cir. 2008). Medical opinions are arranged in a hierarchy of three groups, namely opinions from (i) treating physicians, (ii) examining physicians, and (iii) non-examining physicians, with the opinions of treating physicians generally accorded the most weight. *See Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 692 (9th Cir. 2009).

The ALJ may reject the contradicted opinion of an examining physician by providing "specific and legitimate reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, [she] errs." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *See Nguyen v. Chater,* 100 F.3d 1462, 1464 (9th Cir.1996).

"The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes,* 881 F.2d at 751 (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). "The ALJ must do more than offer his conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). "This is so because, even when contradicted, a treating *or examining physician's opinion* is still owed deference and will often be 'entitled to the greatest weight . . . .'" *Id*. (quoting *Orn*, 495 F.3d at 633) (Emphasis supplied.) The opinion of a non-examining physician "cannot by itself constitute substantial evidence" justifying the ALJ's rejection of an examining physician. *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995), *as amended* (Apr. 9, 1996); *see also Pitzer v. Sullivan,* 908 F.2d 502, 506 n. 4 (9th Cir. 1990).

//
//
//

**B.     Analysis of Two Opinions**

**1.     Hourly Breaks from Work**

Despite claiming to give "great deference" to Dr. McMillian, the ALJ implicitly rejected Dr. McMillian's opinion that plaintiff required an hourly break from work by excluding this limitation from her RFC determination. In her decision, the ALJ spends approximately three pages summarizing plaintiff's medical history (AR at 20-23), which spans more than 500 pages in the record. (*Id*. at 359-915.) Thereafter, the ALJ failed to state any reasons, much less "specific and legitimate reasons that are supported by substantial evidence," *Ryan*, 528 F.3d at 1198, supporting her rejection of certain medical evidence which the Court reviews here.

With respect to Dr. McMillian's opinion on the limitation of hourly breaks, the ALJ did not "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [her] interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 75. The ALJ decision states, in relevant part:

> I give great weight to Dr. Vu's testimony as it was based on a review of the record in its entirety, other than the sleep study which revealed findings consistent with his testimony and is supported by the objective medical findings. I also give great deference to Dr. McMillian's conclusions as they are not inconsistent with Dr. Vu's findings and are likewise supported by the objective medical evidence of record."

(AR at 23). The ALJ failed to address the conflicts between Dr. Vu's and Dr. McMillan's opinions, and merely concluded that Dr. Vu's conclusions were supported by objective medical evidence while entirely ignoring Dr. McMillan's opinion regarding hourly rest breaks. Merely claiming to give it "great deference" does not make it so.

Nonetheless, the Court recognizes that the record may provide some support for rejecting Dr. McMillan's opinions regarding RFC limitations. For example, the ALJ decision states that:

> The claimant [] underwent left heart catheterization and selective coronary angiography in September 2010. That study showed minimal coronary artery diseases. An EKG performed in the same month showed improvement in the claimant's cardiac condition. When compared to an earlier EKG performed in July 2010, the September 2010 EKG showed a decrease in her ventricular rate, evidence that the claimant's ST was no longer depressed in the lateral leads and

9

> evidence that a nonspecific T wave abnormality was no longer evident in the lateral leads. In October 2010, an echocardiogram revealed a left ventricular ejection fraction of 65%

(AR at 20-21) (internal citations omitted.)

In particular, Dr. McMillan's treatment notes and the objective medical evidence provide some support for rejecting Dr. McMillan's opinion. However, the ALJ's conclusion suffers from a lack of explicit, necessary analysis and interpretation of the record.[4] The ALJ does not specifically relate any of the information summarized above to her ultimate finding to give the most weight to Dr. Vu. Although one could speculate as to the import of the information recounted above, the Court cannot affirm the ALJ on a ground upon which [she] did not rely. *See Orn*, 495 F.3d at 630 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)). While the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion," it may do so only "if those inferences are there to be drawn." *Magallanes*, 881 F.2d at 755.

The Court finds that the ALJ failed to explain in sufficient detail the specific conflicts she saw in the record and how those conflicts led her to the ultimate decision on the amount of weigh to give Dr. McMillian's opinion. Although the ALJ set out a summary of the facts, she failed to identify the conflicting clinical evidence specifically, and her interpretation of it. Further, the ALJ did not explicitly state the findings she made that led her to her ultimate conclusion on the weight to accord Dr. McMillian's opinion regarding hourly rest breaks. *See Reddick*, 157 F.3d at 725. The ALJ thus failed to "do more than offer [her] conclusions," *Embrey*, 849 F.2d at 421-22, which do not constitute specific and legitimate reasons for rejecting Dr. McMillian's opinion on hourly rest breaks and are thus not sufficient.

---

[4] Notably, there exists contrary evidence supporting a graver diagnosis. For example, on October 3, 2012, plaintiff was admitted to the intensive care unit after complaining of severe chest pain and left arm numbness and presenting with severely high blood pressure. (AR at 788-92.) An EKG performed the following day showed severe concentric left ventricular hypertrophy. (*Id.* at 798, 805.) An echocardiogram performed on June 5, 2013, showed a small hypercontractile left ventricle with ejection fraction estimated at 80%, and severe left ventricular hypertrophy with left ventricle diastolic dysfunction and reduced ventricular compliance. (*Id.* at 872-73.)

Defendant argues that the ALJ's decision was free of reversible error because the ALJ need not accept all of the limitations identified by Dr. McMillan. The Court agrees that the ALJ was not bound to accept Dr. McMillian's opinions. However, the ALJ is required to state specific and legitimate reasons for rejecting the opinions of an examining physician such as Dr. McMillian. As discussed above, the ALJ wholly fails to confront the inconsistencies between the opinions of Dr. McMillan and Dr. Vu regarding plaintiff's RFC limitations, specifically the requirement for an hourly break from work.

Accordingly, the Court finds that the ALJ did not provide the requisite specific and legitimate reasons for rejecting the opinion of examining physician Dr. McMillon. Consequently, plaintiff's motion is **GRANTED IN PART** and the Court **REMANDS** the action for further proceedings. Defendant's cross-motion is **DENIED**.

### 2. Daily Limit on Standing and Walking

Plaintiff also argues that the ALJ improperly rejected Dr. McMillan's opinion that plaintiff was limited to four hours of standing or walking per day. For the reasons discussed above, the Court finds that the ALJ erred by failing to state specific and legitimate reasons for rejecting the examining physician's opinion regarding this limitation.

### V. MOTION FOR REVERSAL WITHOUT REMAND

Plaintiff invites the Court to enter a judgment reversing the Commissioner's final decision without a remand for a rehearing. The Court declines. "The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. . . ." *Moore v. Astrue*, 2008 WL 2811983, at *10 (N.D. Cal. 2008) (citing *Reddick,* 157 F.3d at 728). Where, as here, "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded . . . ." *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir.1981). Further, remand is appropriate because the ALJ "is in a better position than this [C]ourt to evaluate the evidence." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (citing *McAllister v. Sullivan,* 888 F.2d 599, 603 (9th Cir.1989); *see also Springer v. Chater*, 91 F.3d 155 (9th Cir. 1996)). Therefore, plaintiff's request to enter a judgment reversing the Commissioner's final decision without a remand for a rehearing is **DENIED**.

## VI. CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is **GRANTED IN PART** as to reversal and remand for a rehearing and **DENIED IN PART** as to reversal without rehearing. The Commissioner's cross motion for summary judgment is **DENIED**. This action is hereby **REMANDED** to the ALJ for further proceedings consistent with this Order. Judgment will be entered accordingly.

This Order terminates Docket Numbers 14 and 22.

**IT IS SO ORDERED**

Date: August 3, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**